**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| IMPERIAL CAPITAL BANK, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>SUSSEX GROUP, LLC, et al., )<br>)<br>Defendants. ) | Case No.  CIV-09-0483-F |

## ORDER

Defendants First American Title & Trust Company, First American Title Insurance Company, and Marcia J. Chappelear, move to dismiss the Complaint pursuant to Rules 12(b)(1), 12(b)(6) and 9(b), Fed. R. Civ. P.  (Doc. no. 39.)  The motion has been fully briefed and is ready for determination.

### Background

Plaintiff, Imperial Capital Bank (ICB), asserts claims under the Racketeer Influenced and Corrupt Organizations Act, specifically 18 U.S.C. § 1962(c), and various common law theories of recovery.  ICB seeks to recover damages resulting from an alleged scheme to defraud ICB as mortgage lender through a series of deceptively structured transactions involving the sale of  apartment properties.

The 57-page Complaint includes ten separately identified claims.  In addition to various civil RICO claims, the Complaint alleges fraud and deceit, conspiracy to defraud, negligent misrepresentation, and breach of a promissory note; the Complaint also seeks foreclosure of ICB's mortgage, appointment of a receiver, and enforcement of a guaranty given by Kevin Flessner (a non-moving defendant).

The allegations concerning the moving defendants' involvement in the RICO scheme are detailed later in this order. The gist of the allegations is that the movants prepared and sent false title documentation in relation to the transactions in question.

Standards

The party invoking the court's jurisdiction has the burden of establishing jurisdiction. Merida Delgado v. Gonzales, 428 F.3d 916, 919 (10th Cir. 2005).

In passing on a motion to dismiss, whether bringing a facial attack on the ground of lack of jurisdiction over the subject matter under Rule 12(b)(1) or whether challenging the complaint for failure to state a cause of action under Rule 12(b)(6), the non-movant enjoys similar safeguards; the allegations of the complaint should be construed favorably to the pleader and the court will not look beyond the face of the complaint to determine jurisdiction. *See*, *e.g.*, Sea Vessel Inc. v. Reyes, 23 F.3d 345, 347 (11th Cir. 1994) (non-moving party receives the same protection with respect to 12(b)(1) as it would defending against a motion brought under Rule 12(b)(6), quoting Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990)); 2 Moore's Federal Practice, §12.30[4] (Matthew Bender 3d ed.)

The inquiry under Rule 12(b)(6) is whether the complaint contains enough facts to state a claim for relief that is plausible on its face. Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir., 2007), quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007). To survive a motion to dismiss, a plaintiff must nudge his claims across the line from conceivable to plausible. *Id*. The mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims. Ridge at Red Hawk, 493 F.3d at 1177. Thus, even under Rule 8 (not to

be confused with Rule 9(b)), federal pleading "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

In conducting its review under either Rule 12(b)(1) or 12(b)(6), the court assumes the truth of the plaintiff's well-pleaded factual allegations and views them in the light most favorable to the plaintiff. *Id*.

Movants' first ground for dismissal is that ICB does not have standing under RICO because its claims are not ripe. Citing Anderson v. Ayling, 396 F.3d 265, 269 (3d Cir. 2005), ICB argues that under RICO, this issue is viewed as a question of whether an actionable claim has been stated rather than as a question of subject matter jurisdiction. The distinction is not critical here because the result stated in this order is the same whether the motion is decided under the standards of Rule 12(b)(1) or Rule 12(b)(6).

The motion also argues that the Complaint does not meet the pleading standards of Rule 9(b). Robbins v. Wilkie, 300 F.3d 1208, 1211 (10th Cir. 2002), states that: "Following the direction of the Supreme Court, we hold that at the pleading stage of civil RICO actions, a plaintiff must plead damages to business or property in a manner consistent with Rule 8 to show standing and is not required to plead with the particularity required by Rule 9(b)." The Supreme Court authority Robbins referred to was NOW v. Scheidler, 510 U.S. 249(1994). NOW held that where plaintiffs alleged that a RICO conspiracy "has injured the business and/or property interests" of plaintiffs, "[n]othing more is needed to confer standing...at the pleading stage." *Id*. at 256.

Discussion

*Challenge Based on Standing or Ripeness*

The moving defendants argue that the RICO claim is not ripe for adjudication, should therefore be dismissed, and that the court should decline to exercise supplemental jurisdiction over the remaining claims.

Although there is a fair amount of discussion in the parties' briefs about specificity of damages, the moving defendants emphasize in their reply brief that their challenge is not based on any argued lack of specificity in the amount of damages. Rather, they argue that standing does not exist with respect to the RICO claims because any injury ICB suffered as a as a secured creditor is wholly contingent on the outcome of the foreclosure and guaranty claims which are a part of this action. Prior to conclusion of the foreclosure and guaranty proceedings, movants argue that ICB cannot allege that it has, as yet, actually suffered damages. ICB's predicament is shown, movants argue, by repeated allegations that ICB's RICO damages are "in an amount yet to be determined." (Doc. no. 1, ¶ ¶ 77, 81, 88, 92.) As a result, movants argue, ICB has not alleged facts to show its RICO claims are ripe for adjudication and ICB has not alleged facts in support of standing.

Movants rely primarily on RICO cases from other jurisdictions for the proposition that plaintiff's RICO claim is not ripe because plaintiff has not yet foreclosed its mortgage or enforced its guaranty. Under these authorities, movants argue that foreclosure and enforcement of the guaranty would mitigate ICB's damages, demonstrating that ICB's damages are unripe.

For Tenth Circuit authority on this subject, movants rely primarily on <u>Deck v. Engineered Laminates</u>, 349 F.3d 1253 (10th Cir. 2003). In <u>Deck</u>, a business owner brought suit against competitors and their purported successors, alleging RICO claims as well as claims based on breach of contract, fraud, unjust enrichment and outrageous

conduct. Under Rule 12(c), Fed. R. Civ. P., the district court entered judgment on the pleadings in favor of the defendant on plaintiff's civil RICO claim. The Tenth Circuit reversed the portion of the district court's ruling that had dismissed the RICO claim as unripe. Id. at 1255. The Tenth Circuit reiterated the rule that a plaintiff "has standing to bring a RICO claim only if he was injured in his business or property by reason of the defendant's violation of §1962." Id. at 1257. The Court then stated:

> Defendant's argument [that the RICO claim is not ripe and should be dismissed because Plaintiff does not have a judgment] might be correct if Plaintiff's only alleged injury were prejudice to his ability to collect damages for breach of contract. See, Motorola Credit Corp. v. Uzan, 322 F.3d 130 (2d. Cir. 2003).

Deck at 1260.

In Motorola, the decision cited in Deck, the Second Circuit dismissed the lenders' RICO claims arising out of loans that had not been foreclosed. The court concluded that the lenders lacked statutory standing under RICO because their claims were unripe, and it dismissed the claims without prejudice subject to reassertion at some appropriate later time. Motorola at 136-37. Thus, citing the above-quoted statement from Deck and Deck's acknowledgment of Motorola, movants argue that the Tenth Circuit embraces the rule in the Second Circuit, which movants argue provides that until a secured creditor forecloses the loans which form the basis of RICO damages, a secured creditor's RICO claims are not ripe.

The court rejects this argument. For one thing, the Deck statement is dicta. This fact is clearly signaled by the Tenth Circuit when it states that dismissal "might" be required "if" plaintiff's "only" injury were prejudice to his ability to collect damages for breach of contract. Furthermore, based on the fraudulent inducement claim in that action, Deck found that the plaintiff had alleged an injury that was not dependent on recovery on the contract claim. The plaintiff alleged that he had been

fraudulently induced to enter into a settlement agreement which required him to limit his competition. *Id.* at 1260. Focusing on the limitation on competition, Deck concluded that "Plaintiff's RICO claim is ripe, even though some alleged damages may be too speculative to recover before the contract claim is resolved." *Id.*

Similarly here, ICB alleges that "in reliance upon the misrepresentations made by Defendants pursuant to the Scheme," ICB "funded [a] Loan to Archway, in the amount of $2,300,000.00," and that "acting in reliance upon the misrepresentations made by Defendants, Plaintiff authorized the release of the funds for the mortgage loan." (Doc. no. 1, ¶. 41.) Each of the RICO claims alleges that movants' actions have caused injuries to ICB's "business and property." Thus, ICB, like the plaintiff in Deck, alleges business injuries resulting from fraudulent inducement to contract. Not all of ICB's fraudulent inducement business injuries may be mitigated by recovery on its security. For example, ICB's business injuries may include lost opportunity costs incurred when ICB was allegedly induced to make the large loan described in the Complaint and was thereby deprived of other opportunities. The Complaint also alleges that the scheme caused "violation of the lender's LTV [loan to value ratio] and restrictions upon the use of borrowed monies to pay that part of the purchase price above the loan amount...." (Doc. no. 1, ¶ 25).[1] These business injuries do not depend on the value of ICB's security.

The RICO claims consistently allege that ICB "has been directly and distinctly injured" by the movants' conduct and the Complaint states that it is only the "amount" of those injuries which is "as yet undetermined." Thus, the Complaint alleges that RICO injuries have already been suffered. Enough details of the RICO scheme and ICB's damages are alleged to make these allegations more than conclusory. Although

---

[1] ICB's response brief describes LTV and "equity pad" needs as regulatory requirements. (Doc. no. 58, p. 10.)

bifurcation may be necessary at a future stage so that ICB's damages may be more clearly defined before the RICO claims are adjudicated, this is not a cause for dismissal. Authorities such as Deck, NOW, 510 U.S. at 256, and Robbins, 300 F.3d at 1211, indicate that in these circumstances the Tenth Circuit would not interpret standing rules as narrowly as movants urge this court to do here. ICB has adequately alleged facts in support of its standing to pursue the RICO claims and these claims are ripe for adjudication.

This aspect of the movant's motion will be denied.

*Challenge for Failure to Allege Conduct of, or Participation in,*
*Operation or Management of the Enterprise*

Movants argue that the Complaint does not allege that movants conducted or participated in the operation or management of the RICO enterprise. Movants correctly argue that general and vague allegations are not sufficient in this regard. It is not necessary, however, to allege that the participant had significant control; participation in the operation or management of the RICO enterprise is enough. Tal v. Hogan, 453 F.3d 1244, 1269 (10th Cir. 2006). Here, movants argue that they are only alleged to have provided regular title services or negligent title services so that a RICO claim is not stated against them.

The Complaint includes many specific allegations regarding the movants' involvement in the RICO scheme. The Complaint alleges:

-- that "Defendants adjusted the Scheme...to include the issuance of title commitments falsely certifying that the flip seller was the actual owner of the property" (¶ 26);

-- that "Defendants knew that the Scheme would not work unless they could conceal the existence of the D. & S. Smallie/D&SS Contract and their pending purchase of the Archway Apartments for $1,950,000.00, and deceive Plaintiff into

believing that the $2,880,000.00 purchase price in the D & SS/Archway Contract was an arm's-length agreement" (¶ 33);

-- that "in order to execute the Scheme, the Defendants agreed and acted to make the purported sale of the Archway Apartments in the D&SS/Archway Contract appear to be an arm's-length transaction" (¶ 34);

-- that "the FATTCO Defendants [the movants here, First American Title & Trust Company, First American Title Insurance Company and Marcia J. Chappelear] concealed from the D. & S. Smallie Trust and the Plaintiff the other's pending transaction" (¶ 34(d));

-- that "the FATTCO Defendants prepared two conflicting title commitments attesting to the vested ownership of the Archway Apartments" (¶ 34(e));

-- that "the FATTCO Defendants...in the execution of the Scheme, sent the Title Commitment prepared by the FATTCO Defendants in connection with the D. & S. Smallie Trust/D&SS Contract side of the flip via FedEx to Mr. Don Smallie of the D. & S. Smallie Trust, Mr. Flessner and Mr. Andrew W. Rosin, Esq. ..., in Sarasota, FL, acting at the Flessner Defendants' direction at all relevant times as their 'closing attorney,' agent and representative," and that "acting in connection with the D&SS/Archway Contract side of the flip, the FATTCO Defendants, again acting... at the direction of the Flessner Defendants in the execution of the Scheme, sent the Title Commitment falsely certifying D&SS to be the owner of the Archway Apartments to Plaintiff's loan processor" (¶ 34(e));

-- that "[t]he FATTCO Defendants' actions had the effect of deceiving Plaintiff into believing that...D&SS was the vested owner of the Property, thus further assuring that Plaintiff would not question the arm's-length nature of the sale transaction between D&SS and Archway" (¶ 34(e));

-- that "Defendants, through Ms. Chappelear, transmitted to... ICB, via email, copies of proof of wires in [certain] sums" (¶ 40);

-- that "Plaintiff, in reliance upon the misrepresentations made by Defendants pursuant to the Scheme, funded Loan to Archway" (¶ 41);

-- that "[t]he Loan...closed on or about December 27, 2006...[h]owever, unknown to Plaintiff, the sale of the Archway Apartments by D. & S. Smallie Trust, the actual owner, to D&SS also closed on or about December 27, 2006, in the execution of the Scheme by the Defendants" (¶ 42);

-- that "[a]lso in execution of the Scheme, and unknown to Plaintiff, a second warranty deed relating to the Archway Apartments...was also recorded by the Defendants, acting through the FATTCO Defendants" (¶ 44);

-- that "Defendants' use of the false Title Commitment in the D&SS/Archway Contract side of the flip transaction reflected a lesson learned from earlier transactions under the Scheme" (¶ 47);

-- that "neither the Flessner Defendants nor the FATTCO Defendants had anticipated that, in connection with the Royal Oak Transaction, any conflict between the names of the owner of the property in the title commitment prepared by the FATTCO Defendants in connection with the second leg of the flip and the flip seller in the HVW/ROA Contract, might alert the lender to the scam" (¶ 52);  and

-- that "Defendants' use of the false Title Commitment issued by the FATTCO Defendants, falsely representing that D&SS was the vested owner of the Archway Property, coupled with the very selection of 'D&SS Trust' as the name of the seller in the second leg of the Archway Transaction, reflects the Defendants' incorporation of the lessons learned in the preceding transactions under the Scheme.  Moreover... the FATTCO Defendants' issuance of the false title commitment in the Archway Transaction when next employed by the Flessner Defendants in the Scheme, is a clear

example of the Flessner Defendants disciplining their co-conspirators in the execution of the Scheme" (¶ 68).

The gist of these allegations is that movants prepared conflicting title commitments and concealed material information, making movants integral, if not crucial, participants in the RICO scheme. This Complaint does much more than allege that the movants supplied ordinary title services, or that movants were merely negligent or deficient with respect to the services they provided. Accordingly, movants' cases are distinguishable and do not control here.[2]

This aspect of the movants' motion will be denied.

## Conclusion

After careful consideration of the pleadings and the relevant authorities, the court concludes that the movants are entitled to no relief under Rules 12(b)(1), 12(b)(6) or 9(b). The motion to dismiss is **DENIED**.

Dated this 17th day of August, 2009.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

09-0483p008(pub)  rev  .wpd

---

[2] For example, in BancOklahoma Mortgage Corp. v. Capital Title Co., Inc. 194 F.3d 1089 (10th Cir. 1999), the court considered whether there was support in the record at the summary judgment stage for plaintiff's claim that defendants had participated in the management of the RICO enterprise. The memorandum relied on by plaintiff lacked specifics as to persons, dates, transactions or amounts. Id. at 1101. In University of Maryland at Baltimore v. Peat, Marwick, Main & Co., 996 F.2d 1534 (3d Cir. 1993), the Third Circuit affirmed the district court's ruling that Peat Marwick's rendering of a variety of generic financial services was not enough to show Peat Marwick had a part in operating or managing the RICO enterprise. Id. at 1539-40.